UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:17-cv-00086

| | | |
|---|---|---|
| **HUNTER STRUCTURAL, P.A.** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| **ARP ENGINEERING, INC., and** | ) | |
| **DAVID SZABO,** | ) | |
| | ) | |
| Defendants. | ) | |

**THIS MATTER** is before the Court upon Defendant David Szabo's Motion to Dismiss (Doc. No. 14) and Defendant Arp Engineering, Inc.'s Motion for Judgment on the Pleadings (Doc. No. 15). The issue is now ripe before this Court.

## I. BACKGROUND

Plaintiff Hunter Structural, P.A., ("Hunter Structural" or Plaintiff) is a structural engineering firm. The principal owner of the firm is H. Eugene Hunter. Hunter Structural creates engineering drawings to be used for construction projects, and they are typically created using software for computer-aided design ("CAD"). Over the course of many years, Hunter Structural has created a large library of CAD files ("the CAD Files") that consist of "completed drawings for prior projects and files that contain individual design details developed by Mr. Hunter for engineering elements that may be used in future drawings." (Compl., ¶ 11). The CAD Files were kept on a secure Carbonite system.

Defendant David Szabo ("Szabo") is a structural designer and unlicensed engineer who was hired by Hunter Structural to assist with the drafting of various engineering drawings. In

1

order to perform his obligations to Hunter Structural, Szabo was given access to the CAD Files. Hunter Structural terminated Szabo's services in December 2014. Szabo shortly thereafter began working for a competing structural engineering firm, Defendant Arp Engineering, Inc. ("Arp Engineering").

Hunter Structural filed a Complaint on February 27, 2017, and an Amended Complaint on April 14, 2017. Hunter Structural alleges that Szabo unlawfully copied and removed portions of the CAD Files, that Szabo and Arp Engineering—through use of the CAD Files—violated a copyright that Hunter Structural registered for on certain drawings (the "Take 5 Drawings"), and that Szabo and Arp Engineering have continued to benefit from the use of the unlawfully obtained CAD Files. As a result, Hunter Structural alleged seven causes of action: (1) Copyright Infringement, (2) Misappropriation of Trade Secrets, (3) Computer Trespass (Szabo only), (4) Conversion, (5) Unfair Competition, (6) Unjust Enrichment, and (7) Unfair and Deceptive Trade Practices.

Between the two Motions filed by Defendants, every cause of action is challenged except for the computer trespass claim against Szabo.

## II. STANDARDS OF REVIEW

The Defendants raise three separate grounds for dismissal in their Motions: motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), motion to dismiss for failure to state a claim under Rule 12(b)(6), and motion for judgment on the pleadings under Rule 12(c).

There are two ways that a defendant may assert lack of subject matter jurisdiction in a motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure: facially or factually. *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). And different standards of review apply to the two scenarios. *Id.* Accordingly, the Fourth Circuit has held that a court must

first determine whether the defendant is alleging a facial challenge to the sufficiency of the jurisdictional allegations in the complaint, or a factual challenge to the jurisdictional allegations in the complaint. *Id.* "[W]hen a defendant asserts that the complaint fails to allege sufficient facts to support subject matter jurisdiction, the trial court must apply a standard patterned on Rule 12(b)(6) and assume the truthfulness of the facts alleged." *Id.* at 193. But, "when the defendant challenges the veracity of the facts underpinning subject matter jurisdiction, the trial court may go beyond the complaint, conduct evidentiary proceedings, and resolve the disputed jurisdictional facts." *Id.*

There is an exception to this rule. If the defendant makes a factual challenge to the complaint but "the jurisdictional facts are inextricably intertwined with those central to the merits, the court should resolve the relevant factual disputes only after appropriate discovery." *Id.* An issue is inextricably intertwined—and thus should not serve as the basis for dismissal for lack of subject matter jurisdiction—when "the contested basis for jurisdiction is also an element of the plaintiff's federal claim." *Rivanna Trawlers Unlimited v. Thompson Trawlers, Inc.*, 840 F.2d 236, 239 (4th Cir. 1988) (citing *Bell v. Hood*, 327 U.S. 678, 682 (1946)). This holds "unless the jurisdictional allegations are clearly immaterial or wholly unsubstantial and frivolous." *Kerns*, 585 F.3d at 193.

When faced with a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must "accept as true all well-pleaded allegations and . . . view the complaint in a light most favorable to the plaintiff." *Mylan Labs, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). The Court "assume[s] the[] veracity" of these factual allegations, and "determine[s] whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). However, the court "need not accept as true unwarranted inferences, unreasonable

conclusions, or arguments." *E. Shore Mkts., Inc. v. J.D. Assocs. LLP*, 213 F.3d 175, 180 (4th Cir. 2000). Thus, to survive a motion to dismiss, the plaintiff must include within his complaint "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Finally, a motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure is governed by the same standard as motions brought under Rule 12(b)(6). *Massey v. Ojaniit*, 759 F.3d 343, 347 (4th Cir. 2014). "The sole distinction between the two motions is that a court ruling on a Rule 12(c) motion may consider the answer as well as the complaint." *In re Stucco Litigation*, 364 F. Supp. 2d 539, 541 (E.D.N.C. 2005).

### III. DISCUSSION

#### A. Rule 12(b)(1) Motion to Dismiss

Both Defendants assert a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction with respect to Hunter Structural's copyright infringement claim. Following the procedure set forth by the Fourth Circuit in *Kerns*, this Court must first determine whether the defendants assert a facial or a factual challenge to Hunter Structural's complaint. Szabo's Motion challenges the facial sufficiency of the complaint. (Szabo Mem. in Support, 5). Arp Engineering's Motion goes further, arguing that even if the complaint is facially sufficient, the evidence provided in the Defendants' attachments shows that subject matter jurisdiction does not exist as a factual matter. (Arp Engineering Mem. in Support, 5).

##### i. Facial Challenge

We begin with the allegation that Hunter Structural's complaint is facially insufficient to merit subject matter jurisdiction. Under 28 U.S.C. § 1331, this Court has subject matter jurisdiction over any claim arising under the laws of the United States, including a claim for

Copyright Infringement under 17 U.S.C. § 501. Because only plaintiffs that have standing to sue present a valid case or controversy under Article III of the Constitution, standing is a fundamental component of a court's subject matter jurisdiction. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102 (1998).

Only the legal or beneficial owner of an exclusive right under a copyright has standing to bring a copyright infringement claim. 17 U.S.C. § 501(b). Copyright protection subsists "in original works of authorship fixed in any tangible medium of expression." *Id.* § 102(a). Authorship thus requires originality and a means of fixing that original work in tangible form. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 355 (1991). Generally, "the author is the party who actually creates the work, that is, the person who translates an idea into a fixed, tangible expression entitled to copyright protection." *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 737 (1989). A corporation is the author of works prepared by its employees in the scope of their employment, as well as commissioned works in certain categories that are created by independent contractors, so long as the contractor expressly agrees "that the work shall be considered a work made for hire." 17 U.S.C. §§ 101, 201(b). Thus, in order to have standing, a corporate plaintiff must allege an exclusive right of ownership over a work based on the work of its employees or an agreement with an independent contractor.

Applying the same standard as for a motion under Rule 12(b)(6), the Court finds that Hunter Structural's complaint sufficiently alleges ownership of a valid copyright. Hunter Structural alleges ownership over engineering drawings, which, as architectural works, qualify as "original works of authorship" that can receive copyright protection. *See* 17 U.S.C. § 102(a)(8). As factual proof of ownership, Hunter Structural alleges that its employees provided the source of originality and the means of fixation for the Drawings within the scope of their employment.

Specifically, it alleges that Mr. Hunter, the owner of Hunter Structural, designed and developed the plans and controlled and supervised the drafting of the Drawings by Szabo.

Additionally, Hunter Structural alleges that it actually applied for and was granted a copyright for its Take 5 Drawings. Hunter Structural claims that the registration number is VA-2-031-055 and the effective date is February 9, 2017. While a plaintiff does not actually need a registered copyright in order to have standing, *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 166 (2010), the existence of a copyright registration serves as prima facie proof of the validity of the copyright, *M. Kramer Manufacturing Co. v. Andrews*, 783 F.2d 421, 434 (4th Cir. 1986). Thus, the existence of the registration is a separate sufficient factual allegation strongly supporting the claim of ownership.

Defendants argue that the Take 5 Drawings attached to Hunter Structural's complaint undermine its claim of ownership because they include a copyright notice from another company, Childrey Robinson Associates, which was Hunter Structural's client for the Take 5 project. This exhibit must be considered, as a court must evaluate a complaint in its entirety, including documents attached to or incorporated into the complaint. *E.I. duPont Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011). However, the exhibit is consistent with the factual allegations in the Complaint that the Hunter Take 5 Drawings were completed in 2014, as the exhibit is dated "4-28-2014." And the mere affixing of a copyright notice on the document by Childrey Robinson does not destroy Hunter Structural's alleged ownership interest. Rather, because Hunter Structural alleges that the effective date of its copyright registration came almost three years later, the exhibit at most alleges that Hunter Structural is making a claim for ownership superseding any claimed by Childrey Robinson.

Defendants also assert that Hunter Structural failed to adequately allege ownership because Szabo completed the Drawings and was an independent contractor—not an employee—of Hunter Structural. Hunter Structural has not pled any facts supporting the independent contractor theory, so if Szabo is the creator of the Drawings,[1] he is entitled to ownership unless he can be classified as an employee of Hunter Structural. The Supreme Court has held that agency law should determine whether a hired party is an employee or an independent contractor. *Cmty. for Creative Non-Violence*, 490 U.S. at 743. Several factors must be considered, including "the hiring party's right to control the manner and means by which the product is accomplished," "the skill required, the source of the instrumentalities and tools, the location of the work, the duration of the relationship between the parties, whether the hiring party has the right to assign additional projects to the hired party, the extent of the hired party's discretion over when and how long to work, the method of payment, the hired party's role in hiring and paying assistants, whether the work is part of the regular business of the hiring party, whether the hiring party is in business, the provision of employee benefits, and the tax treatment of the hired party." *Id.* at 751–52. No single factor is "determinative." *Id.* at 752. Rather, authorship is generally a question of fact reserved for the jury. *Andrien v. S. Ocean County Chamber of Commerce*, 927 F.2d 132, 134 (3d Cir. 1991).

At this stage of the litigation, Hunter Structural only needs to provide sufficient factual support that there is a plausible claim that it is the owner of a valid copyright. Hunter Structural's Complaint alleges that Hunter controlled and supervised Szabo's drafting, that Szabo worked at Hunter Structural's offices, that Szabo used Hunter Structural's computer equipment

---

[1] Hunter Structural also claims that Mr. Hunter, not Szabo, is the sole creator of the Drawings. Because the Court finds that Hunter Structural alleges sufficient facts to show that Szabo is an employee, the Court does not need to address this question in order to resolve this dispute.

and software license, that Szabo had access to worker's compensation employment benefits, and that the Take 5 Drawings "were developed based upon engineering plans and designs created by Mr. Hunter." Although Hunter Structural's Answer to Arp Engineering's Counterclaim concedes other facts that are relevant to the ultimate question of whether or not Szabo was an employee, the factual allegations made by Hunter Structural are sufficient to show that it is plausible that Szabo was an employee of Hunter Structural, and thus that Hunter Structural has ownership rights.

Accordingly, the Complaint is facially sufficient to establish subject matter jurisdiction.

## ii. Factual Challenge

Arp also argues that Hunter Structural lacks standing because the factual allegations in the Complaint supporting subject matter jurisdiction are false. Under a Rule 12(b)(1) claim that challenges the underlying facts supporting jurisdiction, "the trial court may go beyond the complaint, conduct evidentiary proceedings, and resolve the disputed jurisdictional facts." *Kerns*, 585 F.3d at 193. But, when "the jurisdictional facts are inextricably intertwined with those central to the merits, the court should resolve the relevant factual disputes only after appropriate discovery." *Id.* Thus, if they are inextricably intertwined, the court should deny a Rule 12(b)(1) motion, "assume jurisdiction," and proceed to the merits. *Carter v. United States*, 694 F. App'x 918, 924 (4th Cir. 2017) (quoting *Kerns*, 585 F.3d at 193). When the issues are inextricably intertwined, the court should only continue to dismiss under Rule 12(b)(1) if the jurisdictional allegations are "clearly immaterial or wholly unsubstantial and frivolous." *Id.*

Thus, the first step is to determine whether or not the jurisdictional facts are "inextricably intertwined" with the merits of the case. Facts are inextricably intertwined when "the contested basis for jurisdiction is also an element of the plaintiff's federal claim." *Rivanna Trawlers*, 840

F.2d at 239. A claim for copyright infringement requires proof of two elements: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist*, 499 U.S. at 361. Here, copyright ownership is the contested basis for jurisdiction. But it is also the first element of a claim for copyright infringement. Thus, the issues are inextricably intertwined. Arp concedes this point. (Arp Mem. in Support, 10).

The next step is to determine if Hunter Structural's jurisdictional allegations are "clearly immaterial or wholly unsubstantial and frivolous." Put another way, "dismissal for lack of subject-matter jurisdiction because of the inadequacy of the federal claim is proper only when the claim is 'so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy.'" *Steel Co v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) (quoting *Oneida Indian Nation of N.Y. v. County of Oneida*, 414 U.S. 661, 666 (1974)). Arp argues that Hunter Structural's contention that Szabo was an employee is wholly unsubstantial and frivolous. This Court disagrees. In light of the factual allegations contained in the Complaint and assessed above, the Court finds that Hunter Structural's alleges sufficient facts to support a claim that Szabo was an employee, and thus its claim is not frivolous, immaterial, unsubstantial, or otherwise devoid of merit, but rather that it presents a live factual controversy regarding authorship.

Because the facts are inextricably intertwined with the merits, the Court will not resolve this factual dispute at this early stage of the litigation, but will rather assume subject matter jurisdiction and proceed to the merits.

**B. Rule 12(b)(6) and Rule 12(c) Motions**

Szabo also brings a Rule 12(b)(6) Motion to Dismiss for failure to state a claim, and Arp Engineering brings a 12(c) Motion for Judgment on the Pleadings. The standard for the two is

9

the same, except that additional pleadings may be considered in the 12(c) Motion, so they will be assessed simultaneously.

### i. Copyright Infringement

A claim for copyright infringement requires proof of two elements: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist*, 499 U.S. at 361.

As discussed above, Hunter Structural has pled sufficient facts to plausibly allege that it is the owner of a valid copyright. Defendants also challenge the second element, that Szabo and Arp Engineering actually copied the Hunter Drawings.

When direct evidence of copying is absent, a plaintiff can rely on circumstantial evidence to raise a presumption of copying. *Towler v. Sayles*, 76 F.3d 579, 582 (4th Cir. 1996). A presumption of copying attaches when the plaintiff shows: (1) that the defendant had access to the work, and (2) that the two works are "substantially similar." *Id.* Here, the Complaint plainly alleges that Szabo had access to the Take 5 Drawings through Hunter Structural's cloud-based storage system, that the Take 5 Drawings and CAD Files were missing from Hunter Structural's system, that Arp used the CAD Files to create drawings that were "identical" to Hunter Structural's drawings, and that an inspector believed Hunter Structural had prepared the drawings that Arp submitted because of their similarity to previous Hunter Structural drawings. Further, Hunter Structural attached copies of two of the drawings to its Complaint in order to demonstrate the similarities.

Hunter Structural has thus alleged facts that raise a presumption of copying. Szabo contends that certain differences between the two drawings undermine Hunter Structural's claim of substantial similarity. But that is a factual dispute that must be resolved at a later stage in the

litigation, where the parties can address whether the works are extrinsically similar—"typically with the aid of expert testimony"—and whether the intended audience would see the works as similar. *Id.* at 583–84. Accordingly, the motion to dismiss the copyright infringement claim must be denied.

### ii. Misappropriation of Trade Secrets

Hunter Structural also alleges a claim for misappropriation of trade secrets under the Defend Trade Secrets Act, 18 U.S.C. § 1836(b)(1). In order to plead a violation of the Defend Trade Secrets Act, a plaintiff must allege: (1) that he holds a trade secret, (2) that the trade secret was misappropriated, and (3) that the trade secret implicates interstate or foreign commerce. *Id.*; *Hawkins v. Fishbeck*, No. 3:17-cv-00032, 2017 WL 4613664, at *5 (Oct. 16, 2017). Hunter Structural has clearly alleged facts supporting the second and third elements. But, Defendants argue that Hunter Structural's claim must be dismissed under the first element because the CAD Files do not qualify as "trade secrets" as a matter of law.

A protected trade secret can be any form of "financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes," so long as (1) "the owner thereof has taken reasonable measures to keep such information secret," and (2) "the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information." 18 U.S.C. § 1839(3).

Defendants argue that Hunter Structural has failed to take reasonable measures to keep its CAD Files secret. Specifically, Defendants argue that the CAD Files are merely copies of

11

engineering drawings that have already been submitted to clients, inspectors, and public officials, and thus have been intentionally disclosed. In defense of this argument, Defendants rely on *Hunn v. Dan Wilson Homes, Inc.*, 789 F.3d 573 (5th Cir. 2015). In *Hunn*, the Fifth Circuit affirmed the decision of the district court after a bench trial that the defendant did not breach his fiduciary duties because the CAD files he delivered to a third party were not maintained as confidential information. *Id.* at 581. However, that decision followed evidence that the plans disclosed were exactly the same as the physical copies previously disseminated by Hunn to the same third party. *Id.* Thus, it is certainly correct that copies of the same information already disclosed are not entitled to protection as trade secrets.

But, Hunter Structural does not allege that the CAD Files are merely copies of previously-disclosed drawings. Rather, Hunter Structural has alleged that the CAD Files contain "completed drawings for prior projects *and* files that contain individual design details . . . that may be used in future drawings." (Compl., ¶ 11 (emphasis added)). Thus, viewed in the light most favorable to the plaintiff, the Complaint alleges that the CAD Files contain additional files that have not been disclosed. It goes on to allege that these CAD Files are "highly valuable" and are accordingly made available only to a "limited" number of individuals who access them to perform their job duties. (Compl., 3). Additionally, Hunter Structural claims that Szabo "was one of the few individuals given access" to the CAD Files during his time working for Hunter Structural and that when Mr. Hunter discovered that some of the files were missing he contacted Mr. Arp in an effort to prevent the files from being used or disseminated. (Compl., 4–5). Thus, Hunter Structural has sufficiently pled that it took reasonable measures to keep valuable information secret and has sufficiently alleged a violation of the Defend Trade Secrets Act.

### iii. Preemption of State Claims

Finally, Defendant Arp asserts that all of the remaining state law claims against it (conversion, unfair competition, unjust enrichment, and unfair and deceptive trade practices) are preempted by Hunter Structural's copyright infringement claim.

17 U.S.C. § 301(a) states that "all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 . . . and come within the subject matter of copyright as specified by sections 102 and 103 . . . are governed exclusively by this title." Thus, in order for § 301(a) to preempt a state law claim, two elements must be satisfied: (1) "the work is within the scope of the 'subject matter of copyright as specified in 17 U.S.C. §§ 102, 103,'" and (2) "the rights granted under state law are equivalent to any exclusive rights within the scope of federal copyright as set out in 17 U.S.C. § 106." *Rosciszewski v. Arete Assocs., Inc.*, 1 F.3d 225, 229 (4th Cir. 1993) (quoting *Ehat v. Tanner*, 780 F.2d 876, 878 (10th Cir. 1985), *cert. denied*, 479 U.S. 820 (1986)).

First, Hunter Structural's CAD Files are within the scope of the "subject matter of copyright." As previously discussed, "architectural works" can qualify for copyright protection, 17 U.S.C. § 102(a)(8), and Hunter Structural has alleged that these files were developed by Mr. Hunter and were his property. And like the specific Take 5 Drawing, these Files are fixed within a tangible medium, such that they could be accorded copyright protection. *See Trandes*, 996 F.2d at 659 (finding that rights in computer programs and files can come within the subject matter of copyright). It is irrelevant that Hunter Structural has not alleged a copyright interest or infringement with respect to these Files, as the preemption statute covers all materials within the *scope* of works that could be copyrighted. Thus, the first requirement is satisfied.

Second, in order to "determine whether a particular cause of action involves rights equivalent to those set forth in § 106, the elements of the causes of action should be compared, not the facts pled to prove them." *Trandes Corp. v. Guy F. Atkinson Co.*, 996 F.2d 655, 659 (4th Cir. 1993). Section 106 grants exclusive rights (1) "to reproduce the copyrighted work;" (2) "to prepare derivative works based upon the copyrighted work;" (3) "to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending;" (4) "to perform" certain works publicly; (5) "to display" certain copyrighted works publicly; and (6) "to perform" sound recordings "by means of a digital audio transmission." 17 U.S.C. § 106.

The Fourth Circuit applies the "extra element" test to determine if this requirement is satisfied:

> State-law claims that infringe one of the exclusive rights contained in § 106 are preempted by § 301(a) if the right defined by state law "'may be abridged by an act which, in and of itself, would infringe one of the exclusive rights.'" . . . However, "if an 'extra element' is 'required instead of or in addition to the acts of reproduction, performance, distribution or display, in order to constitute a state-created cause of action, . . . there is no preemption,'" provided that "'the extra element' changes the 'nature of the action so that it is *qualitatively* different from a copyright infringement claim.'"

*Rosciszewski*, 1 F.3d at 229–230 (emphasis in original) (internal citations omitted).

The elements of a conversion claim under North Carolina law are: "(1) ownership in the plaintiff, and (2) a wrongful conversion by the defendant." *Bartlett Milling Co., L.P. v. Walnut Grove Auction and Realty Co.*, 665 S.E.2d 478, 489 (N.C. Ct. App. 2008). Assuming that North Carolina conversion covers intellectual property,[2] this cause of action can be satisfied by a single act of copyright infringement. Thus, "§ 301 will preempt a conversion claim where the plaintiff

---

[2] The parties cite competing precedent discussing the applicability of conversion claims to electronic files. Because this issue can be resolved on preemption grounds, the Court refrains from deciding whether or not conversion could apply to the CAD Files.

14

alleges only the unlawful retention of its intellectual property rights and not the unlawful retention of a tangible object embodying its work." *U.S. ex rel. Berge v. Bd. of Trustees of the Univ. of Ala.*, 104 F.3d 1453, 1463 (4th Cir. 1997).

Here, it is clear that Hunter Structural has only alleged the unlawful retention of its intellectual property rights: digital copies of the Hunter CAD Files. This is distinct from the case that Hunter Structural relies on, *Tire Engineering & Distribution, LLC v. Shandong Linglong Rubber Co., Ltd.*, 682 F.3d 292 (4th Cir. 2012), because in that case the defendants actually took possession of physical blueprints, denying plaintiff the right to control them. *Id.* at 310; *see also Coll. of Charleston Found. v. Ham*, 585 F. Supp. 2d 737, 748 (D.S.C. 2008) ("A conversion cause of action only passes the extra element test where there was actually physical property converted, or some other circumstance . . . which makes the conversion cause of action fundamentally distinct from the kind of claim that could be brought under the Copyright Act.").[3] Because there is no additional element alleging the retention of physical property or other circumstance rendering the conversion claim "fundamentally distinct" from the type of claim that could be brought under the Copyright Act, Hunter Structural's claim for conversion is preempted.

The North Carolina common law tort of unfair competition covers a broad category of anti-competitive conduct that is reduced to a simple test: "Has the plaintiff's legitimate business been damaged through acts of the defendants which a court of equity would consider unfair?" *Charcoal Steak House of Charlotte, Inc. v. Staley*, 139 S.E.2d 185, 189 (N.C. 1964) (quoting *Carolina Aniline & Extract Co. v. Ray*, 20 S.E.2d 59, 61 (N.C. 1942)). Although this tort often

---

[3] Hunter Structural also heavily relies on *Bridgetree, Inc. v. Red F. Mktg. LLC*, No 10-cv-228, 2013 WL 443698 (W.D.N.C. Feb. 5, 2013). However, in that case Judge Whitney did not discuss the copyright preemption issue because he found it to have been waived by the defendants.

arises in the context overlapping with trademark infringement, *Georgia Pacific Consumer Products, LP v. Von Drehle Corp.*, 618 F.3d 441 (4th Cir. 2010), it also can cover the unauthorized appropriation of original works, *United Artists Records, Inc. v. E. Tape Corp.*, 198 S.E.2d 452 (N.C. Ct. App. 1973).[4] Thus, unless a plaintiff alleges facts independently supporting a claim for unfair competition, it must be preempted. Here, Hunter Structural only alleges the appropriation of the CAD Files and Take 5 Drawings, so its claim for common law unfair competition must be preempted.

To assert a claim for unjust enrichment under North Carolina law, a plaintiff must show: "(1) a measurable benefit was conferred on the defendant, (2) the defendant consciously accepted that benefit, and (3) the benefit was not conferred officiously or gratuitously." *Primerica Life Ins. Co. v. James Massengill & Sons Const. Co.*, 712 S.E.2d 670, 677 (N.C. Ct. App. 2011). Because a single act of copyright infringement could satisfy these elements, a claim for unjust enrichment is an "equivalent right" requiring preemption unless the plaintiff can demonstrate "that defendants were unjustly enriched by 'material beyond copyright protection.'" *Pan-Am. Prods. & Holdings, LLC v. R.T.G. Furniture Corp.*, 825 F. Supp. 2d 664, 695 (M.D.N.C. 2011) (quoting *Microstrategy, Inc. v. Netsolve, Inc.*, 368 F. Supp. 2d 533, 537 (E.D. Va. 2005)). Here, Hunter Structural only claims unjust enrichment as a result of the use of the CAD Files, so this claim is also preempted.

A claim under the Unfair and Deceptive Trade Practices Act ("UDTPA") requires a plaintiff to show: "(1) defendants committed an unfair or deceptive act or practice; (2) in or affecting commerce; and (3) that plaintiff was injured thereby." *First Atl. Mgmt. Corp. v. Dunlea Realty Co.*, 507 S.E.2d 56, 63 (N.C. Ct. App. 1998). "Under a strict application of the

---

[4] Notably, the *United Artists Records* case was decided prior to the enactment of § 301 of the Copyright Act. Thus, the issue of preemption would not have arisen in that case.

extra element test, therefore, the UDTPA claim would be preempted by the Copyright Act, because the UDTPA does not *require* an element in addition to those necessary to constitute a prima facie claim of copyright infringement." *Rutledge v. High Point Reg'l Health Sys.*, 558 F. Supp. 2d 611, 619 (M.D.N.C. 2008). Because of the "sweeping breadth" of UDTPA, a plaintiff may save his UDTPA claim by alleging additional facts of unfairness or deception, but "only if they independently support it such that the claim is qualitatively different from a Copyright Act violation." *Id.* Here, Hunter Structural merely repeats the same allegations with respect to the taking of the CAD Files and Take 5 Drawings, which are within the scope of copyright protection. Unlike cases finding that preemption does not apply, such as *Pan-American Products & Holdings*, 825 F. Supp. 2d at 695, Hunter Structural does not allege more than "simple misappropriation." Thus, the claim under UDTPA must be preempted.

## IV. CONCLUSION

For the foregoing reasons, Defendant David Szabo's Motion to Dismiss (Doc. No. 14) and Defendant Arp Engineering, Inc.'s Motion for Judgment on the Pleadings (Doc. No. 15) are both **GRANTED IN PART, DENIED IN PART.**

Accordingly, the following claims set forth in the Complaint against both defendants shall be dismissed:

- Count IV – Conversion
- Count V – Unfair Competition
- Count VI – Unjust Enrichment
- Count VII – Unfair and Deceptive Trade Practices

17

**SO ORDERED.**

Signed: February 1, 2018

Graham C. Mullen
United States District Judge